IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Faurecia Exhaust Systems, Inc., et al.,            Case No. 3:05 CV 7482

                              Plaintiffs,          MEMORANDUM OPINION
                                                   AND ORDER

              -vs-
                                                   JUDGE JACK ZOUHARY
John Walker,

                              Defendant.


        This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction or, in the Alternative to Dismiss Based upon Forum Non-Conveniens (Docket No. 16),

to which Plaintiffs filed a Brief in Opposition (Docket No. 20), and Defendant filed a Reply

Memorandum (Docket No. 21) and a Supplemental Memorandum (Docket No. 23).  An Oral

Argument was held on September 27, 2006.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### BACKGROUND

        Plaintiffs are Faurecia Exhaust Systems, Inc. (Faurecia Toledo), a Delaware corporation

headquartered in Toledo, Ohio, and Faurecia Siegles d'Automobiles, SA (Faurecia France), a French

corporation headquartered in Boulogne, France (collectively Faurecia).  Faurecia France is a parent

company of Faurecia Toledo.  Defendant John Walker is a resident of Switzerland with dual

citizenship (United States and Ireland).

In April 2001, while working for Ford Motor Company in Michigan, Walker interviewed for the position of Vice President Purchasing, Exhaust Systems Business Group, of Faurecia France.  The interview took place in Paris, and the position was located in Boulogne, France at Faurecia's world headquarters.  In June 2001, Faurecia France offered Walker the position, which he accepted on July 2, 2001.  After accepting the position, Walker was informed that he would actually be employed by Faurecia Toledo in order to avoid the financial burdens of French employment, i.e. French social security, healthcare, and pension requirements.[1]  The employment agreement, signed by Walker, specified that he was an employee of Faurecia Toledo, but was to be "seconded" to Faurecia France (Docket No. 20, Ex. B).  Walker was paid through Faurecia Toledo during his entire employment, and Faurecia France fully credited Faurecia Toledo for all compensation paid to Walker (Walker Declaration, Docket No. 23 at ¶11).

Shortly after he signed his employment agreement, Walker began to work part-time at Faurecia Toledo while preparing to move to France.  During this approximately one-month period, Walker sold his Ann Arbor home and took intensive language lessons.  On August 12, 2001, Walker assumed his position in France, and served in that capacity until March 2004.  In March 2004, Walker accepted the position of Vice President Purchasing, Components Business Group, and remained at Faurecia France's Boulogne headquarters.  At this point, Walker signed a new employment agreement, but that contract expressly provided that the original agreement with Faurecia Toledo remained in full effect (Docket No. 20, Ex. I).

---

[1]

In France, employers are responsible for social security and other social insurance contributions and taxes which can amount to as much as forty-five percent (45%) of an employee's total remuneration (Pretnar Aff., Docket No. 21, Ex. B at ¶¶17-20).

2

While working for Faurecia, Walker had no involvement with Faurecia Toledo other than receiving his salary and benefits.  Walker never took orders from anyone in Toledo, nor did he report to Faurecia Toledo or its executives (Walker Decl. at ¶¶4-6).  Expense reports show that Walker took a few reimbursed trips to Toledo during the course of his employment (Docket No. 20, Ex. H), but he contends these trips had nothing to do with the operation of Faurecia Toledo.  Walker's position often required trips to the United States, among other countries, all for the benefit of Faurecia France (Walker Decl. at ¶7).  Further, although Walker's travel expenses were paid by Faurecia Toledo, he was required to first obtain approval from Faurecia France, which would credit Faurecia Toledo (Walker Decl. at ¶¶9-11).

On May 28, 2004, Walker notified Faurecia France of his intent to resign.  He stopped working three months later, on August 27, 2004.  Walker and his family now reside in Switzerland, where he works for a Swiss company.  Plaintiffs claim that Walker did not give them the proper amount of notice due under his employment agreements.

Plaintiffs first filed this suit on March 3, 2005 in the United States District Court, Eastern District of Michigan.  That suit was dismissed by Judge Duggan for lack of personal jurisdiction over Walker.  *See Faurecia Exhaust Systems, Inc. v. Walker*, No. 2:05-cv-70833, 2005 WL 2491447 (E.D. Mich. Oct. 7, 2005).  Faced with these facts, the court held that Walker did not satisfy the requirements of Michigan's long-arm statute, nor would the exercise of jurisdiction comport with due process.  *Id*. at *3-5.  Judge Duggan opined that he saw "no reason why [Michigan] - where Defendant's contacts are minimal at best - [was] preferable to France or Ohio - where Defendant's contacts with the forum clearly are stronger."  *Id*. at *5.

3

Plaintiffs next filed the instant action.  Walker has again filed a Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative for dismissal pursuant to the doctrine of *forum non conveniens* (Docket No. 16).

## PERSONAL JURISDICTION

In response to a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper.  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). "Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives:  it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).  The method selected is left to the discretion of the district court.  *Id.*   Further, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (quoting *Weller v. Cromwell Oil Co.*, 504 F.3d 927, 930 (6th Cir. 1974); *Serras*, 875 F.3d at 1214.  The district court's choice determines the weight the plaintiff's burden.  *See Dean*, 134 F.3d at 1272; *Theunissen*, 935 F.2d at 1458; *Serras*, 875, F.2d at 1214.

> "When . . .  a district court rules on a jurisdictional motion to dismiss
> . . . without conducting an evidentiary hearing, the court must consider
> the pleadings and affidavits in a light most favorable to the plaintiff . . .
> To defeat such a motion, [the plaintiff] need only make a prima facie
> showing of jurisdiction.  Furthermore, a court . . . does not weigh the
> controverting assertions of the party seeking dismissal. . . ."

*Dean*, 134 F.3d at 1272 (quoting *Compuserve*, 89 F.3d at 1262).  Dismissal is only proper if all the facts taken together fail to establish a prima facie case for personal jurisdiction. *Compuserve*, 89 F.3d at 1262.

"In dealing with a diversity case, we look to the law of the forum state to determine whether personal jurisdiction exists." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *accord Nationwide Mut. Ins. Co. v. Tryg Int'l*, 91 F.3d 790, 793 (6th Cir. 1996) (citing *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1298 (6th Cir. 1989).  That is, personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Materials Users*, *Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).  In *Bird*, however, the court stated:

> We have recognized that Ohio's long-arm statute is not conterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam).  Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Cole v Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Bird*, 289 F.3d at 871-72.

Personal jurisdiction may be based on either general or specific jurisdiction.  *Id.* at 873. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a

5

continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* at 738 (quoting *Third Nat'l Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)).  In contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.  *Id.* at 874 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  Specific jurisdiction may be based on a single act.  *Nationwide*, 91 F.3d at 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)).  As the parties have conceded that general jurisdiction does not exist, the Court will focus solely on the existence of specific jurisdiction.

Plaintiffs bear the burden of making a prima facie showing that the court has jurisdiction over the person of each defendant to the action.  When deciding a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing (and in this case, neither party requested an evidentiary hearing), the court treats the allegations contained in the complaint, affidavits, and depositions as true, and resolves any factual dispute in plaintiffs' favor.  *Welsh v. Gibbs*, 631 F.2d 436, 438-39 (6th Cir. 1980), *cert. denied*, 450 U.S. 981 (1981); *Gold Circle Stores v. Body Maven, Inc.*, 711 F. Supp. 897, 899 (S.D. Ohio 1988).

### 1.    Ohio's Long-Arm Statute

The Court engages in a two-step process in determining whether it has *in personam* jurisdiction over a defendant.  First, it must look to state law.  The Ohio long-arm statute, OHIO REV. CODE § 2307.382(A), provides:

> A Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

> (1) Transacting any business in the state . . . .

The long-arm statute has many provisions, but sub-section (1) is the only one that can arguably be applied here.  The Ohio Supreme Court has broadly interpreted the term "transacting business" for purposes of personal jurisdiction as follows:

> "Transact," as defined by Black's Law Dictionary (5 Ed.1979) 1341, "* * * means to *prosecute negotiations*; to carry on business; *to have dealings * * *.  The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is *a broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion * * *." (Emphasis added.)

*Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc*., 53 Ohio St. 3d 73, 75, 559 N.E.2d 477, 480 (1990), *cert. denied*, 499 U.S. 975, 111 S. Ct. 1619, 113 L. Ed. 2d 717 (1991) (emphasis in original).

Moreover, "personal jurisdiction does not require physical presence in the forum state." *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236 (1994).

In the instant action, Walker entered into an employment contract with Faurecia Toledo, an Ohio resident.  This contract is sufficient to satisfy the "transacting business" requirement:

> The Ohio Supreme Court interprets the "transacting business" clause of the Ohio long-arm statute as meaning "to carry on business" and "to have dealings," and as being "broader than the word 'contract.'" *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236, 638 N.E.2d 541 (1994) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75, 559 N.E.2d 477 (1990)). In a recent decision, this Court pointed out that "if the phrase 'transacting business' is 'broader than the word contract,' 'transacting business' must logically subsume the narrower act of contracting." [*Highway Auto Sales v. Auto-Konig of Scottsdale, Inc.*, 943 F. Supp. 825, 829 (N.D. Ohio 1996)].  Because [defendants] contracted directly with plaintiffs, their actions are subsumed within the "transacting business" clause of Ohio's long-arm statute.

*Douglas v. Modern Aero, Inc.*, 954 F. Supp. 1206, 1210-11 (N.D. Ohio 1999).  As the narrow act of contracting is subsumed by broader term "transacting business," Walker's contract with Faurecia Toledo constitutes "transacting business" as that term is used in Ohio's long-arm statute.  Further, as Plaintiffs have sued Walker for breaching this contract (among others), this matter naturally arises from Walker's "transacting business" in Ohio.  *See Cole,* 133 F.3d at 436 ("[I]f the cause of action is for breach of that contract [with an Ohio resident] . . . then the cause of action naturally arises from the defendant's activities in Ohio.").

Walker's employment contract is sufficient to satisfy the requirements of OHIO REV. CODE § 2307.382(A)(1).  Accordingly, the Court must next turn to the due process inquiry.

## 2.    Due Process

Because Ohio's long-arm statute grants the *in personam* jurisdiction, the Court must now determine whether such jurisdiction comports with the due process requirements of the United States Constitution.  Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotation and citation omitted).

The Sixth Circuit has propounded a three-part test to determine whether a non-resident defendant has had sufficient contacts with a forum to support personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

8

*Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 380 (6th Cir. 1968). As noted by the

Sixth Circuit in *Calphalon Corp.*, 228 F.3d at 721-22:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. There is a difference between what *World-Wide Volkswagen* calls a mere "collateral relation to the forum State,"" and the kind of substantial relationship with the forum state that invokes, by design, "the benefits and protections of its laws." An understanding of this difference is important to the proper application of the "purposeful availment " test.

Walker claims that Plaintiffs cannot satisfy the "purposeful availment" prong because he was

"directed" to sign the employment agreement with Faurecia Toledo.  He claims that it was the

"unilateral" decision of Faurecia France, and he had no choice in the matter.  Although it may have

been Faurecia's idea, Walker still reaped a benefit in this arrangement, which contributed to his

attractiveness as a job candidate and may well have landed him the job.  Further, Walker could have

refused this arrangement, but he did not.  Instead, he knowingly entered into the employment

agreement with Faurecia Toledo and subsequently accepted compensation and benefits through the

Ohio entity.  Viewing the facts in the light most favorable to Plaintiffs, Walker purposefully availed

himself of the benefit of acting in Ohio.  Further, the second prong is satisfied because this cause of

action arises, at least in part, from Walker's contacts with Faurecia.

Plaintiffs, however, cannot satisfy the third prong of the due process analysis: that "the acts

of the defendant or consequences caused by the defendant . . . have a substantial enough connection

with the forum state to make the exercise of jurisdiction over the defendant reasonable."  In a case

with similar facts, the court in *Whirlpool v. King*, 298 F. Supp.2d 687 (W.D. Mich. 2003), held that

exercising personal jurisdiction would be unreasonable.  In *Whirlpool*, the defendant (King) worked

for Whirlpool at its Michigan headquarters for three years, then took two successive "expatriate

assignments:" Singapore for one and one-half years and Italy for five years.  When in Italy, King worked for Whirlpool Europe, a subsidiary of Whirlpool USA.  *Id*. at 688.  As in the instant action, King received her pay and benefits through Whirlpool USA but was directed and supervised by, and worked for the benefit of, Whirlpool Europe.  *Id*. at 690.  King's position was terminated, and she sued in Italy for severance benefits.  Whirlpool then sued King in Michigan, and King filed a motion to dismiss for lack of subject matter jurisdiction.  At the time of the suit, King had not lived in Michigan for almost ten years.

Judge McKeague found that King satisfied the Michigan long-arm statute, but held that exercising personal jurisdiction would violate due process.  Specifically, the court held that the third prong of the due process analysis, i.e. the reasonableness test, had not been met:

> In evaluating the reasonableness of jurisdiction, i.e., whether it would comport with notions of fair play and substantial justice, the Court considers such factors as *the burden on the defendant*, *the forum state's interest in adjudicating the dispute*, *the plaintiff's interest in obtaining convenient and effective relief*, and *the judicial system's interest in obtaining the most efficient resolution of controversies*.

*Id.* at 690-91 (emphasis added) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

In the instant action, as in *Whirlpool*, each of these "*Burger King* factors" weighs in favor of declining jurisdiction.  First, the burden on Walker, a resident of Switzerland, of litigating these claims in Ohio is obvious and substantial.  Walker has not lived in the United States for five years, and at no time was a resident of the State of Ohio.  This factor weighs heavily against granting personal jurisdiction.

10

Second, Plaintiffs cite *Tharo Systems, Inc. v. cab Produkttechnik GmbH & Co. Kg*, No. 05-3876, 2006 U.S. App. LEXIS 21895 (6th Cir. Aug. 24, 2006) for the proposition that "Ohio has a strong interest in resolving a suit brought by an Ohio company for breach of a multimillion dollar business agreement." *Id*. at \*14.  This argument would be more persuasive if the Ohio entity incurred any real damage here.  As noted above, Faurecia Toledo was credited for all compensation and expenses paid to Walker.[2]  (Walker Decl. at ¶11).  While Ohio may have a technical interest in adjudicating this dispute, it pales in comparison to that of France, where Walker actually performed under the terms of his employment agreements.  *See, e.g., Whirlpool*, 298 F. Supp.2d at 691.

Third, accepting jurisdiction could arguably further "the plaintiff's interest in obtaining convenient and effective relief . . . ." *Id.* at 690-91.  However, as Faurecia's corporate headquarters are located in France, and Walker performed his contract exclusively at Faurecia France, this factor certainly does not outweigh the burden on Walker to litigate in Ohio.

Finally, the interests of judicial economy are admittedly more clearly served in *Whirlpool* than here.  However, as the instant action is in its early stages (no Case Management Conference has been held), the interest of judicial economy is not substantially offended.  Considering the totality of the circumstances, a balance of the above factors is clearly weighted toward declining personal jurisdiction.

In the instant action, exercising personal jurisdiction does not comport with traditional notions of fair play and substantial justice.  Plaintiffs have failed to demonstrate a prima facie case of personal

---

2

At the Oral Argument, Plaintiffs specifically requested and were given an opportunity to provide additional evidence as to this issue, but chose not to do so.  Defendant provided a supplemental Affidavit and Memorandum (Docket No. 23).

jurisdiction.  Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 16) is granted.

### FORUM NON CONVENIENS

Defendant also argues in the alternative that if the Court decides to exercise personal jurisdiction, the matter should still be dismissed based on the common-law doctrine of *forum non conveniens*.[3]  *Forum non conveniens* is a "flexible" principle; indeed, the Supreme Court has refused to promulgate a bright-line rule.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50 (1981); *see also Williams v. Green Bay & Western R. Co.*, 326 U.S. 549, 557 (1946).  Instead, each must be decided on its unique facts.  *Id.*

Although this is a diversity action, the Court must apply the federal law of *forum non conveniens*.  *See Miller v. Davis*, 507 F.2d 308, 316 (6th Cir. 1974).  The Sixth Circuit has held that "[a] dismissal on *forum non conveniens* grounds is appropriate when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors . . . reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court."  *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006) (citing *Piper Aircraft Co.*, 454 U.S. at 256 n.23).  Since the enactment of the federal transfer statute, 28 U.S.C. § 1404(a), the doctrine of *forum non conveniens* has continuing application only where the alternative forum is outside of the United States.  *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994).

---

[3]

 Plaintiffs failed to specifically address the doctrine of *forum non conveniens* in their Brief in Opposition (Docket No. 20).

### 1.    Adequate Alternative Forum

A defendant seeking *forum non conveniens* dismissal must first establish the existence of an

adequate alternative forum. *Rustal Trading US, Inc. v. Makki*, 17 Fed. Appx. 331, 335 (6th Cir. 2001)

(citations omitted).  "Ordinarily, this requirement will be satisfied when the defendant is "amenable

to process" in the other jurisdiction." *Piper Aircraft Co.*, 454 U.S. at 254 n.22 (citing *Gulf Oil Corp.*

*v. Gilbert*, 330 U.S. 501, 506-07 (1947)).  Only in rare instances will the alternative forum be

inadequate, such as where severe obstacles to conducting litigation exist.  *Rustal Trading US, Inc.*,

17 Fed. Appx. at 335 (citing *id.*).  Indeed, a forum is not adequate if the "remedy provided by the

alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all . . . ."  *Piper*

*Aircraft Co.*, 454 U.S. at 254. *See also Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th

Cir. 1984).

In the instant action, there has been no allegation by Plaintiffs that France is not an adequate

alternative forum.  In fact, Plaintiffs attached a memorandum of French law which they cite for the

proposition that their claims are supported by French law (Docket No. 20, Ex. K).  Plaintiffs' only

complaint is "that French courts are likely to view this as a dispute involving the breach of an

American contract, prepared and executed in America between an American entity and an American

citizen and, therefore, not properly a matter for a French court" (Brief in Opp. p. 10).  This argument

fails for two reasons.  First, though counsel for Plaintiffs has tried to distance himself from this fact,

there are two Plaintiffs in this case: a French corporation (Faurecia France) and one of its American

subsidiaries (Faurecia Toledo).  Plaintiffs have sued to enforce contracts with each Faurecia entity,

and it appears that if either Plaintiff was damaged, it was Faurecia France. Second, and more

importantly, Defendant has submitted the affidavit of an expert which demonstrates that French courts

13

have competent jurisdiction to resolve any disputes arising from both contracts at issue here (Pretnar Aff. ¶¶ 9-13).

Finally, there is no suggestion Defendant is not amenable to service of process in France. Although Defendant has not affirmatively proffered expert testimony as to his amenability to process in France, the Court can condition its *forum non conveniens* dismissal on an agreement of Defendant to submit to the jurisdiction of the foreign forum. *See, e.g., Rustal Trading US, Inc.*, 17 Fed. Appx. at 336. Any dismissal of this matter on *forum non conveniens* grounds is conditioned on Defendant submitting to the jurisdiction of the French court system. Accordingly, France is an adequate alternative forum in which this action may be pursued.

### 2. Deference to Plaintiffs' Choice of Forum

Before balancing the various private and public interest factors at issue, the Court must first determine how much deference to afford the Plaintiffs' choice of forum. In general, a plaintiff's choice of forum is afforded a great amount of deference. U.S. plaintiffs, however, are afforded a heightened deference:

> [T]he standard of deference for a U.S. plaintiff's choice of a home forum permits dismissal only when the defendant "establish[es] such **oppressiveness** and **vexation** to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent."

*Duha*, 448 F.3d at 873-74 (emphasis added) (quoting *Koster v. American Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). Foreign plaintiffs, on the other hand, receive no choice-of-forumn deference from the courts. *Piper Aircraft Co.*, 454 U.S. at 256. *See, e.g., Rustal Trading US, Inc.*, 17 Fed. Appx. at 338. "Because the central purpose of any *forum non conveniens* inquiry is to ensure

that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Piper Aircraft Co.*,

454 U.S. at 256.

In the instant action, there are two Plaintiffs, a French corporation and an American

subsidiary.  As noted above, while Plaintiffs have sued to enforce contracts with each Plaintiff,

Faurecia France is the real party in interest here. Therefore, it is only logical that the Court apply the

standard of deference applicable to the foreign plaintiff, Faurecia France.  Accordingly, it is not

necessary for Defendant to establish "oppressiveness and vexation."  Instead, the Court will dismiss

only if "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily

burdensome for the defendant or the court." *Piper Aircraft Co.*, 454 U.S. at 256 n.23.

### 3.      Balance of Private and Public Interests

Once an adequate alternative forum is established, the Court must conduct a balance of

relevant private and public interest considerations.  The various factors for the Court to consider when

ruling on a *forum non conveniens* motion for dismissal were enumerated by the Supreme Court in

*Gulf Oil Corp.*, 330 U.S. 501:

> Among the important private interest considerations are "the relative
> ease of access to sources of proof; availability of compulsory process
> for attendance of unwilling, and the cost of obtaining attendance of
> willing, witnesses; possibility of view of premises, if view would be
> appropriate to the action; and all other practical problems that make
> trial of a case easy, expeditious and inexpensive." The court must also
> consider problems in enforcing a judgment if one is obtained and
> relative advantages and obstacles to a fair trial, if any . . . . The Court
> also identified relevant public interest factors: administrative
> difficulties of courts with congested dockets; the burden of jury duty
> on people of a community having no connection with the litigation;
> desirability of holding a trial near those most affected by it . . .;
> appropriateness of holding a trial in a diversity case in a court which
> is familiar with governing law.

*Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984) (quoting *Gulf Oil Corp.*, 330 U.S. at 508-09) (citations omitted). "The flexibility required in application of *forum non conveniens* is lost if any factor is given undue weight." *Dowling*, 727 F.2d at 613.

First, the private interest considerations weigh heavily in favor of litigating this dispute in France. The substantial bulk of the activity at issue in this case occurred in either France or Europe. Defendant was interviewed in France, negotiated his employment with French Faurecia executives, and worked solely for the benefit of Faurecia France. Further, Defendant's departure from Faurecia took place in France. As Defendant worked solely for Faurecia France and Faurecia Toledo was credited for all compensation it paid, any potential damages, including financial or business impact, took place in France. Accordingly, most if not all witnesses (willing or not) and sources of non-testimonial proof are located in France. The ease of access to these sources of proof, as well the availability and cost of obtaining the attendance of witnesses, weighs heavily in favor of litigating this matter in France.

Additionally, public interest considerations weigh in favor of *forum non conveniens* dismissal. Although one of the Plaintiffs here is an Ohio entity, in reality this is a dispute between a French corporation and its former employee, now a Swiss resident. Additionally, were the matter to stay in this jurisdiction, the Court would apply French law to at least one of the contracts at issue, if not

both.[4]  Accordingly, the public interest considerations do not weigh in favor of litigating the matter in this Court.

An available and adequate alternative forum exists to hear Plaintiffs' claims: France.  Further, a balance of the relevant private and public interest considerations reveals that trial in this Court would be unnecessarily burdensome for Defendant.  Accordingly, dismissal is proper pursuant to the doctrine of *forum non conveniens*.

<u>**CONCLUSION**</u>

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative to Dismiss Based upon Forum Non-Conveniens (Docket No. 16) is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 31, 2006

---

[4]

A federal court sitting in diversity applies the choice of law rules of the forum state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under Ohio choice of law rules, the law of the state with the more significant relationship to the contract governs disputes arising from it.  *Gries Sports Enters., Inc. v. Modell*, 15 Ohio St. 3d 284, 287 (1984).

To determine which state has the more significant relationship to the contract, the Court looks at the following factors: (1) the place of contracting; (2) the place of negotiations of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.  *Id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)).  Based on these factors, French law clearly applies to the March 2004 employment agreement, and arguably applies to the original July 2001 agreement.